Anthony NENNINGER, Petitioner–Appellant,

v.

DEPARTMENT OF SOCIAL SERVICES, DIVISION OF FAMILY SERVICES, Respondent–Respondent.

No. 19253.

Missouri Court of Appeals, Southern District, Division One.

April 27, 1995.

Anthony Nenninger, pro se.

Karen L. Massey, Dept. of Social Services, Jefferson City, for respondent-respondent.

SHRUM, Chief Judge.

Anthony Nenninger (Claimant) appeals from a judgment of the Crawford County Circuit Court that affirmed the findings and orders of the Director of the Missouri Division of Family Services (Director).[1] The court also ruled that Director's decision was not "violative of constitutional provisions."

On appeal, Claimant contends the trial court erred when it found constitutional the Division's written administrative procedure that precludes an otherwise eligible member of a "Food Stamp household" from being included, even on a pro rata basis, unless "the individual is in the household for more than 50 percent of his ... meals." Claimant also asserts that the trial court erred in not conducting an evidentiary hearing at which Claimant could have offered evidence to support his constitutional challenges.

We reverse and remand.

PROCEDURAL HISTORY AND FACTS

In July 1991, Claimant applied to the Division for food stamps. His application, filed with the Crawford County office of the Division, listed "household members" in the following fashion:

| NAME | RELATIONSHIP | BIRTHDATE |
| --- | --- | --- |
| Nenninger, Tony Robert | Self | 2– 3–58 |
| Nenninger, Pedro M. | Son | 1–13–79 |
| Nenninger, Forest R. (⅓ joint custody time) | Son | 1– 7–88 |

The Crawford County agency approved the claim as a two-person "food stamp assis-

1. In this opinion we refer to the Missouri Division of Family Services as "the Division."

tance group," consisting of Claimant and Pedro, but refused to approve Forest as a part of Claimant's group. Claimant timely appealed that decision to Director.

On July 31, 1991, Director's hearing officer heard Claimant's appeal. Linda Smith, employee of the Division, testified that food stamps were not allowed for Forest as part of Claimant's household because he (Forest) was receiving food stamps in his mother's household in Moniteau County, Missouri. She also testified that the Division did not base its decision in such a case "on joint custody."

"MS. SMITH: [I]f the household composition is questionable, [we] determine if the individual is in the household for more than 50 percent of their meals. Meal computation is based on 3 meals per day.... There again, this is what we have based our decision for [Claimant's] son, Forest."

The standard thus described by Smith is based on procedures outlined in the Division's Income Maintenance Manual. Portions of that manual were put in evidence as exhibits 5 and 6. In pertinent part, Exhibit 5 reads:

"Chapter IX, Section II, Page 8d Agency Exhibit 5

. . . .

D. Duplicate Participation

No member of a Food Stamp household will be allowed to participate in (1) more than one Food Stamp household and/or (2) more than one county. Counties must clear each household member for duplicate participation at each certification, recertification and whenever a new household member joins the Food Stamp household.

. . . .

E. Verification of Household Composition Factors

1. The worker will verify the household's status only if it is questionable and would affect the household's eligibility or benefit level....

2. If questionable, the worker will verify any factors affecting the composi-

tion of the household such as household size and boarder status...."

The pertinent part of exhibit 6 reads:

"Chapter IX, Section II, Page 6a Agency Exhibit 6

. . . .

*NOTE:* If the household composition is questionable, determine if the individual is in the household for more than 50% of their meals. Meal computation is based on 3 meals per day. If a person is in the household for any one day, the person is considered to have had 3 meals."

Claimant conceded to the hearing officer that the "Food Stamp worker ... had followed the regulations" but questioned the constitutionality of the regulations. While the hearing officer explained to Claimant his inability to decide constitutional issues and that such questions could properly be raised for the first time before the Circuit Court, the following colloquy occurred:

"[Hearing Officer] ... [W]hat I'm saying is that at this level we don't deal with the constitutional issues. Now if that's really all that you have to say then, perhaps we can conclude the hearing. If you want to get into whether your son, Forest, is in your home 50 percent or more of the time, you're certainly welcome to. Do you want to do that?

[Claimant]: (Inaudible) evidence that I wish to present now.

[Hearing Officer]: Okay, so you pretty much concede that he's in your home less than 50 percent of the time?

[Claimant]: Yes, sir.

[Hearing Officer]: Okay, is there anything else that anyone would like to say then?

[Claimant]: Am I to construe what you're saying is a formal rejection of evidence relating to the Equal Protection issue?

[Hearing Officer]: That's correct. You can assume that ... and I think I've already said this a couple of times at least, that at this level we do not deal with the constitutional issues and if you want to raise those constitutional issues, you have

to take those up into Circuit Court there in Crawford County."

The hearing was then concluded.

Applying the Division's "50 percent" regulation, Director affirmed the Crawford County agency's decision that Forest should not be included as part of Claimant's Food Stamp Assistance Group. Claimant appealed to the Crawford County Circuit Court.

In his petitions for review[2] filed with the trial court, Claimant alleged that the Division's use of the challenged regulations "to exclude Forest Nenninger from [Claimant's] food stamp assistance group:

a) denied [Claimant] of equal protection of the laws as guaranteed by Section 1. of the Fourteenth Amendment to the United States Constitution and Article I, Section 2. of the Missouri Constitution; and

b) infringes on [Claimant's] right to freedom of association between parent and child as guaranteed by the First Amendment to the United States Constitution and Article I, Section 9. of the Missouri Constitution and as encouraged by Section 452.375 RSMo.; and

c) deprived [Claimant] of food stamp benefits consistent with 7 CFR 273.1(a)(iii)."

Also, Claimant requested of the trial court that it "conduct an evidentiary hearing on the merits of this Petition...." In support of his hearing request, Claimant alleged that the hearing officer had "denied [Claimant] the opportunity to present evidence demonstrating facts of the discriminatory effects of [the Division's] rules, thereby depriving [Claimant] of due process...." In a supporting trial brief, Claimant devoted approximately three pages to a recital of what he characterized as "facts" which he stated would establish the factual basis for his constitutional challenge to the Division's regulation.

After additional briefing by both parties and without conducting an evidentiary hearing, the trial court affirmed Director's decision. The body of the trial court's judgment reads:

"The decision of the Director of the Missouri State Division of Family Services was authorized by law, was based upon competent and substantial evidence, was neither arbitrary nor capricious nor violative of constitutional provisions. The policy of the Division of Family Services to issue Food Stamps to individuals residing in the household for more than fifty percent of the time is rationally related to a legitimate government purpose in that it avoids duplicity in Food Stamp coupon issuance. The Director's decision is therefore affirmed."

Claimant appeals from that judgment.

## DISCUSSION AND ANALYSIS

■ Claimant's fourth point relied on is dispositive of this appeal. In it Claimant contends the trial court erred when it ruled his constitutional challenge to the Division's regulations without conducting an evidentiary hearing. He argues that due process requires that he be given an opportunity via an evidentiary hearing "to provide the factual details necessary to demonstrate the actual discriminatory effects of the [Division's] rules," and, that under the circumstances, the trial court denied him that opportunity.

In response, the Director agrees that "one who may be deprived of a right or property by governmental action be afforded notice and an opportunity to be heard," citing *Blydenburg v. David*, 413 S.W.2d 284 (Mo.banc 1967), and *State v. Goodbar*, 297 S.W.2d 525 (Mo.1957), as authority. Director argues, however, that Claimant had an "opportunity to present any evidence to the Circuit Court

---

2. Claimant's first petition for review was completed on a "proper form of affidavit for appeal" furnished Claimant by the Division as required by § 208.100.2. Later, Claimant filed with the circuit court his first and second amended petitions for review in which he presented to the trial court for the first time his constitutional challenges to the Division's regulation. Since the trial court in its opinion addressed the constitutional challenges, it is obvious that it treated the

subsequently filed pleadings as permissible amendments to the original notice of appeal and that each amendment related back to the filing of the original notice. *See Fraher v. Department of Public Health & Welfare*, 484 S.W.2d 663, 665 (Mo.App.1972). Under the circumstances, that "result can cause no prejudice to the Director and is in accordance with the spirit of liberality in pleadings and amendments which generally permeate all of our procedural rules." *Id.*

to demonstrate support for his claim that the challenged administrative procedures unconstitutionally discriminate against his family." We quote verbatim Director's contentions in this regard.

"[Claimant] was given [the] opportunity to give supporting facts *in his Circuit Court Brief.* In fact, the Statement of Facts in that Brief was several pages long and very little of the evidence contained therein was presented to the Agency in the administrative hearing. [Claimant] also had the opportunity to and did file a Reply Brief in response to the brief filed by [Director] in the Circuit Court. Further, the parties appeared before the trial court judge on numerous dates for oral arguments prior to and on the date of the Court's decision.

. . . .

The Circuit Court in the case at hand did allow additional evidence by [Claimant] in the Statement of Facts section of his trial court Brief. [Claimant] further argued those offered facts extensively in both his Brief and Reply Brief. The Circuit Court's decision was based upon the facts contained in the hearing transcript and the *briefs of both parties.*

. . . .

This is a matter of law in which no further evidentiary hearing is required.

As [Claimant] received the opportunity to present evidence at the Circuit Court level, it is [Director's] position that the protection required of procedural due process was met." (Emphasis added.)

A claimant aggrieved by a decision of Director made under § 208.080 may appeal to the circuit court of the county in which such claimant resides. § 208.100.1.[3] Review by a circuit court of a Director's decision is limited to determining whether Director's decision violated constitutional provisions, exceeded DFS statutory authority or jurisdiction, was supported by competent and substantial evidence upon the whole record, was authorized by law, was made upon lawful procedure with a fair trial, was not arbitrary, capricious or

unreasonable, or was a proper exercise of discretion. §§ 208.100.5 and 536.140; Mo. Const. art. V, § 18 (1945). *See Haynes v. Missouri State Division of Family Services,* 874 S.W.2d 457, 458 (Mo.App.1994).

■■ Ordinarily, a circuit court must confine its review of a Director's decision to the record made before the Director. §§ 208.100.4 and 536.140.1. However, when the decision being reviewed by the circuit court does not involve agency discretion, but only involves the application of the law to the facts, as here, the circuit court as a reviewing court may weigh the evidence and determine the facts accordingly. *State ex rel. Bramlet v. Owsley,* 834 S.W.2d 868, 870[2] (Mo.App. 1992); § 536.140.3. Furthermore, whenever a reviewing court is permitted to weigh the evidence and determine the facts for itself per § 536.140.3, the court may consider evidence in addition to the hearing record *if it finds that the evidence could not have been produced or was improperly excluded at the hearing.* State ex rel. Clatt v. Erickson, 859 S.W.2d 239, 241[4] (Mo.App.1993) (emphasis ours); § 536.140.4.

■■ Section 536.140.4 does not mandate that a trial court consider further evidence; it is permissible only. *Jerry–Russell Bliss, Inc. v. Hazardous Waste Management Commission,* 702 S.W.2d 77, 82[6] (Mo. banc 1985). Use of the word "may" in § 536.140.4 means that it is discretionary with a circuit court as to whether it will hear additional evidence. *Wagner v. Jackson County Board of Zoning Adjustment,* 857 S.W.2d 285, 289 (Mo.App.1993). We interfere with a trial court's refusal to take additional evidence in its review of an administrative agency decision *only* where there is an abuse of the trial court's discretion in refusing to delve further into the matter. *See Davis v. Director of Insurance,* 879 S.W.2d 556, 561[7] (Mo.App. 1994); *Eddington v. St. Francois County R–III Board of Education,* 564 S.W.2d 283, 286[7] (Mo.App.1978). *See also Overland Outdoor Advertising Company, Inc. v. State ex rel. Highway and Transportation Com-*

---

**3.** All statutory references are to the Missouri Revised Statutes of 1986 unless otherwise indi-

cated.

*mission,* 823 S.W.2d 138, 140[2] (Mo.App. 1992).

Here, the petition for review filed with the circuit court was predicated upon alleged violations of his rights to equal protection and freedom of association with his son stemming from the Division's regulations. Claimant had attempted to raise these constitutional challenges to the Division's regulations before Director's hearing officer. However, the hearing officer recognized that deciding such questions was beyond the authority of the Director. *Fayne v. Department of Social Services,* 802 S.W.2d 565, 567 (Mo.App. 1991); *Duncan v. Missouri Bd. for Architects, Professional Engineers and Land Surveyors,* 744 S.W.2d 524, 531[3] (Mo.App. 1988). Repeatedly, Director's hearing officer correctly told Claimant of his inability to deal with constitutional issues. He restricted Claimant to presenting evidence on the issue of whether Claimant's son, Forest, was in Claimant's home more than 50 percent of the time. Specifically, the hearing officer told Claimant he was rejecting any evidence proffered by Claimant to support his constitutional issues as he could do that in circuit court.

To raise and preserve his constitutional questions under § 536.140.2(1), Claimant had to present the facts showing such violation. *Perez v. Webb,* 533 S.W.2d 650, 655 (Mo.App. 1976). Under the circumstances, if in this proceeding Claimant was to be given the hearing required by due process, it had to come from the circuit court.[4] *See Fayne,* 802 S.W.2d at 567. Nevertheless, the trial court entered judgment against Claimant without an evidentiary hearing and in spite of Claimant's requests for such hearing. Fundamental fairness dictates that Claimant should have had a reasonable opportunity to call witnesses in support of his constitutional challenges, to present evidence on that question, and, if evidence was rejected, to make an appropriate offer of proof. *See Belleville v. Director of Revenue,* 825 S.W.2d 623, 625 (Mo.banc 1992). To deny Claimant that opportunity was an abuse of judicial discretion. *Id.*

■ We are unpersuaded by Director's argument that a hearing was unnecessary as Claimant had placed proposed facts before the judge via his trial brief. Except where facts asserted in a party's brief are conceded to be true by his or her adversary, *Thornbury v. Morris Oil Company, Inc.,* 846 S.W.2d 238, 239 n. 2 (Mo.App.1993), statements in briefs are not evidence and are insufficient to supply essential matters for review. *Rice v. State Farm Insurance Co.,* 885 S.W.2d 775, 779[16] (Mo.App.1994); *Tintera v. Tintera,* 823 S.W.2d 69, 70[2] (Mo. App.1991).

■ Here, the record does not reveal that Director ever conceded the truth of the facts contained in Claimant's trial brief. To the contrary, Director's counsel during oral argument expressly refused when asked if Director conceded the truth of *all* alleged facts recited in Claimant's trial brief. Under the circumstances, we cannot know whether the trial court considered all, part, or none of the proffered facts in Claimant's trial brief in reaching its decision on the constitutional issues presented. A reviewing court should not indulge in speculation to sustain the decision of an administrative agency nor should it do so in reviewing challenges to the constitutionality of an agency's regulation. *See Rice,* 885 S.W.2d at 779.

Accordingly, the judgment of the trial court is reversed and the cause is remanded

---

4. We do not ignore § 536.050 and Rule 87.02(c) which empower a court to render declaratory judgment on the validity of an agency rule. These provisions have been described as supplements to the Declaratory Judgment Act [§§ 527.010 top 527.140] and as serving to extend the full effect of that remedy to actions against an administrative agency. *Missourians For Separation of Church and State v. Robertson,* 592 S.W.2d 825, 827 (Mo.App.1979). Section 536.050 and Rule 87.02(c) emphasize the public interest in the determination *in advance* of the validity of an agency rule or policy. *Id.* at 836 n. 19. Additionally, these provisions "may [in some instances] afford an expeditious and convenient method of obtaining direct review by suit against the agency itself." Shewmaker, Procedure Before, and Review of Decisions of Missouri Administrative Agencies, 37 V.A.M.S. 145, 165 (1953). We find no authority, however, for saying that the declaratory judgment method is the exclusive procedure for challenging the validity of an agency rule.

to the trial court for proceedings consistent with this opinion.

FLANIGAN and MONTGOMERY, JJ., concur.